﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 191021-39265
DATE: May 29, 2020

ORDER

Entitlement to service connection for left radial and ulnar radicular pain is denied.

Entitlement to service connection for right radial and ulnar radicular pain with paresthesia is denied.

Entitlement to service connection for left knee degenerative arthritis is denied.

Entitlement to service connection for right knee degenerative arthritis is denied.

Entitlement to service connection for chronic sinusitis is denied.

Entitlement to service connection for a cervical strain (claimed as chronic cervicothoracic pain with right upper extremity) is denied.

Entitlement to service connection for a lumbar strain is denied. 

Entitlement to an evaluation in excess of 50 percent disabling for service-connected post-traumatic stress disorder (PTSD) is denied.

FINDINGS OF FACT

1. The preponderance of the evidence of record is against finding that the Veteran has a current disability manifested by left radial and ulnar radicular pain and has not had one at any time during the appeal period.

2. The preponderance of the evidence of record is against finding that the Veteran has a current disability manifested by right radial and ulnar radicular pain and has not had one at any time during the appeal period. 

3. The preponderance of the evidence is against finding that the Veteran’s left knee degenerative arthritis began during active service or is otherwise causally related to an in-service injury or disease.

4. The preponderance of the evidence is against finding that the Veteran’s right knee degenerative arthritis began during active service or is otherwise causally related to an in-service injury or disease.

5. The preponderance of the evidence of record is against finding that the Veteran has a current diagnosis of chronic sinusitis or had one at any time during the appeal period.

6. The preponderance of the evidence is against finding that the Veteran’s cervical strain (claimed as chronic cervicothoracic pain with right upper extremity) is etiologically related ot active service, to include as due to in-service treatment for neck pain.

7. The preponderance of the evidence is against finding that the Veteran’s lumbar strain is etiologically related ot active service, to include as due to in-service treatment for low back pain. 

8. Throughout the appeal period, the Veteran’s service-connected PTSD has been manifested by no worse than occupational and social impairment with deficiencies in most areas.

CONCLUSIONS OF LAW

1. The criteria for establishing entitlement to service connection for left radial and ulnar radicular pain have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2018).

2. The criteria for establishing entitlement to service connection for right radial and ulnar radicular pain with paresthesia have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2018).

3. The criteria for establishing entitlement to service connection for left knee degenerative arthritis have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2018).

4. The criteria for establishing entitlement to service connection for right knee degenerative arthritis have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2018).

5. The criteria for establishing entitlement to service connection for chronic sinusitis have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2018).

6. The criteria for establishing entitlement to service connection for a cervical strain (claimed as chronic cervicothoracic pain with right upper extremity) have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2018).

7. The criteria for establishing entitlement to service connection for a lumbar strain have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2014); 38 C.F.R. §§ 3.102, 3.303 (2018). 

8. The criteria for establishing entitlement to an evaluation in excess of 50 percent disabling for service-connected PTSD have been met. 38 U.S.C. §§ 1155, 5107 (2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. This decision has been written consistent with the new AMA framework.

The Veteran reports honorable active duty service with the United States Army from March 1989 to March 1992. His period service included service during the Gulf War. 

In October 2019, the Veteran filed VA Form 10182, a Notice of Disagreement and requested direct review of the evidence considered by the Board of Veterans Appeals.

Duty to Assist and to Notify

VA’s duty to assist includes providing a thorough and contemporaneous medical examination, especially where it is necessary to determine the current level of a disability. Peters v. Brown, 6 Vet. App. 540, 542 (1994).

In this case, neither the Veteran nor his representative has raised any issues with the duties to assist the Veteran. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

Upon review of the record, the Veteran has not found any pre-decisional duty to assist errors in the present case.

1. Entitlement to service connection for left radial and ulnar radicular pain

The Veteran contends that he suffers from left radial and ulnar pain as causally related to active service.

In analyzing the noted claim, the threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

On review of the record, the Board finds that the Veteran does not have a current diagnosis of left radial and ulnar pain and has not had one at any time during the appeal period.

At enlistment, no abnormalities of the left arm or shoulder were observed in December 1988. However, the comments section referenced a burn to the right forearm and scar on the left shin. A prior history of mild bilateral pes planus was documented as asymptomatic. According to the Veteran, he fractured his left arm at the age of 5. Other conditions included mild bruises associated with an automobile accident in 1988. An emergency care treatment record, dated October 1989, referenced mild injuries suffered in a slip and fall. Reported symptoms included avulsion of tooth, muscle strain, and multiple contusions. Tenderness was also observed about the neck. During a periodic examination, dated June 1991, the Veteran reported a healed left arm fracture and chronic back pain. A report of medical history, bearing the same date, made no reference to arm, shoulder, or cervical pain. A physical examination revealed normal findings at separation.

There is no evidence of post-service treatment for an arm or left shoulder condition.

In January 2019, a private diagnostic consultant rendered the following diagnoses; discogenic radial and ulnar radicular pain of the left upper extremity, and radial and ulnar radicular pain with paresthesia of the right upper extremity. On physical examination of the cervical spine, pain was observed about the radial and ulnar distributions. Following the physical examination, the consultant opined that it is at least as likely as not that Veteran’s condition is casually related to active service, to include in-service treatment for neck pain. The Veteran’s symptoms were deemed to be a permanent and progressive condition. No specific rationale was provided.

In June 2019, the Veteran underwent a physical examination of the peripheral nerves. During the clinical interview, the Veteran reported chronic neck and bilateral shoulder pain. A crawling sensation impacted the neck. Use of prescription medication, Gabapentin, provided some pain relief. 

Post service, the Veteran denied having health insurance for use to seek ongoing treatment. According to the Veteran, he broke his left forearm at 5 years of age with no chronic residual symptoms. Periodic pain sensitivity was endorsed with “bumps” to the area. Recent swelling in the right hand with numbness was associated with his work as a machine operator. 

On examination, no symptoms related to the peripheral nerves were identified. Muscle strength testing revealed normal findings. Sensation and deep tendon reflexes were also normal. There was no evidence of muscle atrophy. The Veteran’s gait was described as slightly antalgic due to back and joint pain. Medial, radial, and ulnar nerve testing yielded normal findings. There was no evidence of paralysis in the upper, middle, and lower radicular groups. Other pertinent physical findings included middle edema impacting the right upper hand. 

X-ray films of the cervical spine with obliques were silent for any evidence of an acute abnormality. No bony foraminal stenosis was shown.

In the same month an addendum opinion was prepared. Therein, the examiner concluded that the Veteran’s left radial and ulnar radicular pain with paresthesia (which clearly and unmistakably existed prior to service) was not aggravated beyond its natural progression by left arm pain during service. In support of the stated conclusion, the examiner noted that there was no evidence of residual complications from the Veteran’s childhood left arm fracture except for hypersensitivity to pain. An upper extremity peripheral nerve evaluation yielded normal findings. The examiner acknowledged review of the private chiropractor’s opinion however, the findings were not supported by diagnostic findings or supportive rationale. Thus, as the record fails to assign a current diagnosis with functional impairment or any evidence of chronic/residual symptoms since separation, the examiner opined that the evidence does not support a finding that the Veteran’s left radial and ulnar radicular pain with paresthesia (which clearly and unmistakably existed prior to service) was aggravated beyond its natural progression by left arm pain during service.

In making all determinations, the Board has fully considered all medical evidence and lay assertions of record. Generally, the Veteran is presumed competent to report on the onset of current symptoms, their impact on daily living and employment, and such reporting is deemed credible. However, as to the etiology of a particular claimed disability, the issue of causation of a medical condition is a medical determination outside the realm of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

The Board recognizes the Veteran’s report of a history of left radial and ulnar pain dating back to active service. However, his contention is not supported by the evidence of record. Service treatment records are largely silent for complaints of upper extremity pain, chronic or worsening symptoms, to include in connection with his childhood injury to the left forearm. 

Post-service treatment records only show a favorable private diagnostic consultant’s opinion. No supportive rationale was provided and there is no evidence that any diagnostic testing was performed. Thus, the Board accords little probative weight to the opinion.

While the Board is sympathetic to the Veteran’s subjective belief that his left radial and ulnar radicular pain dates back to active service and notes his suggestion of a causal linkage to in-service treatment for neck pain; the evidence of record does not support his contentions. In this case, the Board affords greater probative weight to the passage of time, lack of treatment and the VA examiner’s negative opinion regarding etiology. Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107 (b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for left radial and ulnar radicular pain with paresthesia must be denied.

2. Entitlement to service connection for right radial and ulnar radicular pain with paresthesia

The Veteran contends that he suffers from right radial and ulnar pain with paresthesia as causally related to active service.

In analyzing the noted claim, the threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease.

On review of the record, the Board finds that the Veteran does not have a current diagnosis of right radial and ulnar pain with paresthesia and has not had one at any time during the appeal period.

Service treatment records were silent for complaints of right upper extremity pain or any related diagnosis.

There is no evidence of post-service treatment for a right arm or shoulder condition.

In January 2019, a private diagnostic consultant rendered a current diagnosis of right radial and ulnar radicular pain with paresthesia. It was suggested that the condition was causally related to active service, to include as due to in-service treatment for neck pain. No specific rationale was identified.

The Veteran underwent a VA examination of the peripheral nerves in June 2019. During the clinical interview, the Veteran reported chronic neck and bilateral shoulder pain. Neck pain was also described as a crawling sensation. Prescribed medication, Gabapentin, improved his symptoms. 

Post service, the Veteran denied access to health insurance for use in obtaining ongoing treatment. During early childhood, the Veteran broke his left forearm. No chronic residual symptoms were reported. Periodic pain sensitivity was endorsed with “bumps” to the area. The Veteran associated his duties as a machine operator with a recent onset of numbness and swelling in the right hand. 

On examination, no symptoms related to the peripheral nerves were identified. Muscle strength testing revealed normal findings. Sensation and deep tendon reflexes were also normal. There was no evidence of muscle atrophy. The Veteran’s gait was described slightly antalgic due to back and joint pain. Medial, radial, and ulnar nerve testing yielded normal findings. There was no evidence of paralysis in the upper, middle, and lower radicular groups. Other pertinent physical findings included middle edema impacting the right hand. 

X-rays of the cervical spine were silent for any evidence of an acute abnormality. No bony foraminal stenosis was shown.

In same month an addendum opinion was prepared. The examiner acknowledged review of the private consultant’s opinion however, it was afforded little probative weight due to the lack of supportive diagnostic findings or rationale. Moreover, review of service treatment records is silent for complaints of an arm or shoulder condition, a related diagnosis, or post-service treatment for chronic symptomology. Accordingly, no causal linkage was established between the Veteran’s subjective symptoms and active service.

In making all determinations, the Board has fully considered all medical evidence and lay assertions of record. Generally, the Veteran is presumed competent to report on the onset of current symptoms, their impact on daily living and employment, and such reporting is deemed credible. However, as to the etiology of a particular claimed disability, the issue of causation of a medical condition is a medical determination outside the realm of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

The Board recognizes the Veteran’s report of a history right radial and ulnar pain with paresthesia and his suggestion of a causal linkage to in-service treatment for neck pain. However, the evidence of record does not support his contentions. Service treatment records are silent for complaints of upper extremity pain, residuals related to in-service treatment for neck pain, or post-service treatment for chronic and worsening symptomology since separation.

In fact, the only evidence of a current diagnosis is the private diagnostic consultant’s opinion which made no reference to diagnostic testing or supportive rationale.

While the Board is sympathetic to the Veteran’s subjective belief that his right radial and ulnar radicular pain with paresthesia is causally related to active service, the evidence of record does not support his contentions. In this case, the Board affords greater probative weight to the passage of time, lack of treatment and the VA examiner’s negative opinion regarding etiology. Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107 (b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for right radial and ulnar radicular pain with paresthesia must be denied.

3. Entitlement to service connection for bilateral knee degenerative arthritis

The Veteran contends that his bilateral knee condition is causally related to active service.

In considering the Veteran’s claim, the threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. 

The Board concludes that, while the Veteran has a current diagnosis of degenerative arthritis of the bilateral knees, and the evidence shows in-service complaints of knee pain, the preponderance of the evidence weighs against finding that the Veteran’s current condition is etiologically related to active service.

Service treatment records show episodes of bilateral knee pain. In June 1989, the Veteran as evaluated for low back and left lower extremity pain. An emergency care treatment record, dated October 1989, referenced mild injuries suffered in a slip and fall. The Veteran reported symptoms included avulsion of tooth, muscle strains and contusions. Tenderness was also observed about the neck. In June 1991, a report of medical history, made no reference to trick or lock knee. In August 1991, the Veteran was evaluated for complaints of bilateral knee pain following a fall during football practice. A physical examination revealed mild discomfort with slight tenderness to palpation. A small abrasion was observed on the left knee. The Veteran was prescribed wound care and Motrin to treat pain. No bilateral knee abnormalities were observed as separation.

In January 2019, the Veteran was evaluated by a diagnostic consultant. During active service, he was evaluated medial pain impacting the bilateral knees. No specific abnormalities were identified. Oral medications were prescribed to treat pain. Post-service, the Veteran reported ongoing pain and functional limitations. Recurrent pain impairs his ability to engage in prolonged walking, standing, sitting, climbing stairs, changing positions and rising from a seated position. Stiffness, clicking and popping was noted, bilaterally. Range of motion testing revealed flexion limited to 40 degrees with pain. Extension was normal. Right knee flexion was limited to 45 degrees, with pain. Extension was normal. A physical examination revealed global swelling, stiffness and joint crepitus. A current diagnosis of degenerative joint disease of the bilateral knees. The condition was deemed causally related to active service.

In May 2019, the Veteran underwent a VA examination. A current diagnosis of degenerative arthritis of the bilateral knees was indicated. 

During the clinical interview, the Veteran reported intermittent bilateral knee pain dating back to active service. Worsening symptoms were reported on the left side. According to the Veteran, his official duties as a combat medic required frequent bending and lifting, along with frequent ruck marches. In-service treatment included oral pain medications and wrapping. 

Post-service, the Veteran sought treatment in the emergency room for chronic knee pain on or about 2014. No specific abnormalities were identified. Rest and oral medications were prescribed to treat pain. Bilateral knee pain was rated was a 3 on a 10-point scale with weight bearing. Use of ice packs reduced pain. 

Over the prior 6-year period, the Veteran worked as a machine operator with Miller Coors Brewing Company. He worked 8 hours per day; 5-7 days per week. The Veteran’s official duties included repetitive sitting and standing.

During flare-ups, increased pain was noted with prolonged sitting and standing. Functional loss included pain and swelling. 

Range of motion of the right knee revealed flexion and extension limited to 60 degrees. As to the left knee, flexion and extension were limited to 65 degrees. Pain was observed with flexion and extension; it contributes to functional loss. Abnormal range of motion does not contribute to functional loss, to include with repetitive use testing. Localized tenderness or pain to palpation was observed over the posterior knee joint, bilaterally. There was no objective evidence of crepitus, muscle atrophy, joint instability, or any meniscal conditions. Muscle strength testing yielded normal findings. Passive range of motion testing mirrored active range of motion testing. The Veteran endorsed occasional use of bilateral knee sleeves to treat acute pain. 

Diagnostic testing confirmed degenerative arthritis. X-rays show mild cartilage space loss over the medial and lateral femorotibial compartments, bilaterally. A functional impact was described as mild pain with prolonged sitting, standing, and walking. Pain limits functional ability over time. In terms of range of motion, flexion and extension were limited to 60 degrees, bilaterally.

In the same month, an addendum opinion as issued. It acknowledged a review of the record and confirmed the Veteran’s current diagnosis of mild degenerative arthritis of the bilateral knees. The opinion noted that osteoarthritis symptoms often develop slowly and worsen over time. Although the record shows in service treatment for bilateral knee pain, no permanent residuals or chronic disability was noted in service or within one year of separation. Subjective complaints of pain, standing alone, are insufficient to establish a longitudinal trend and therefore, in the absence of objective findings; no causal relationship could be established. Therefore, the examiner opined that it is less likely than not (less than 50 percent probability) that Veteran’s bilateral knee arthritis was incurred in or caused by in-service treatment for bilateral knee pain.

In making all determinations, the Board has fully considered all medical evidence and lay assertions of record. Generally, the Veteran is presumed competent to report on the onset of current symptoms, their impact on daily living and employment, and such reporting is deemed credible. However, in the absence of proof of medical expertise, his in not qualified to offer a complex etiological opinion. 

While the Board recognizes the Veteran’s report of bilateral knee pain dating back to active service and notes in-service treatment, his symptoms were deemed acute and resolved with no related residual diagnoses. 

Moreover, post-service employment included work as a machine operator where his core duties include repetitive sitting, standing and bending. Although the Veteran’s treatment history includes favorable diagnoses of degenerative joint disease and bilateral knee osteoarthritis; the diagnoses were first rendered almost 3 decades after separation. 

While the Board is sympathetic to the Veteran’s subjective belief that his bilateral knee condition is causally related to active service, the evidence of record does not support his contentions. In this case, the Board affords greater probative weight to the passage of time, lack of treatment post-service treatment and the VA examiner’s negative opinion regarding etiology. 

Since the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107 (b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for bilateral knee pain with related diagnoses must be denied. 

4. Entitlement to service connection for chronic sinusitis

The Veteran contends that he suffers from chronic sinusitis as causally related to active service. As discussed more fully below, the preponderance of the evidence is against his claim.

In considering the Veteran’s claim, the threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. 

The Board concludes that, while the Veteran has a current diagnosis of allergic rhinitis, the preponderance of the evidence weighs against finding that the Veteran’s current condition is etiologically related to active service.

Service treatment records were largely silent for complaints of sinus symptoms or any related diagnosis. In April 1989, a screening note of acute medical care referenced complaints of cold symptoms. On physical examination, no signs of redness or swelling were observed in the ears or throat. The Veteran’s lungs were clear. A possible upper respiratory infection (URI) was indicated. Prescribed treatments included Tylenol, Robitussin, and throat lozenges. No complaints of chest pain, sinusitis, a chronic cough, or nasal trouble were listed in a report of medical history dated June 1991. At separation, no respiratory or sinus abnormalities were indicated. A chest X-ray, dated June 1992, revealed normal findings. 

In January 2019, the Veteran was evaluated by a diagnostic consultant. During a clinical interview, the Veteran reported frequent coughing, difficulty breathing and facial pain. He asserted that his symptoms began during active service. A current diagnosis of respiratory deficiency with poor aerobic capacity, to include congestion of the maxillary sinuses was indicated. Chronic sinusitis was noted. According to the consultant, transillumination of the maxillary sinuses was observed which supports the diagnoses rendered. Following the clinical evaluation, the consultant opined that it is as least as likely as not that the Veteran’s sinus condition is causally related to active service. The opinion further suggested a possible undiagnosed illness related to service during the Gulf War, to include exposure to burn pits and/or other particulates. 

In June 2019, the Veteran was afforded a VA examination. A current diagnosis of allergic rhinitis was rendered. 

During the clinical evaluation, the Veteran reported sinus problems during adulthood. Other symptoms include facial pressure, frequent headaches and sinus drainage. Allergy medications were used to treat his symptoms. According to the Veteran, he inhaled unidentified toxins in February or March 2019 within the scope of his employment as a machine operator. Antibiotics were prescribed to treat episodic worsening of symptoms. 

On examination, a current diagnosis rhinitis with 50 percent obstruction of the Veteran’s nasal passage was observed, bilaterally. X-rays revealed an apparent mucosal thickening in one or more left ethmoid air cells; and a hypoplastic right frontal sinus with normal variation. On review of the record, the examiner concluded that it was less likely than not (less than 50 percent probability) that the Veteran’s sinus condition is causally related to active service, to include as due to service in Gulf War, with possible exposure to burn pits or particulates.

Although the favorable private diagnostic opinion was acknowledged, the examiner concluded that the evidence did not support a causal linkage between the Veteran’s current diagnosis and active service. In support of the stated conclusion, the examiner noted that the current diagnosis was first rendered 27 years after separation. Further, there is no evidence of an in-service diagnosis or chronic symptomology, to include within one year of separation.

In making all determinations, the Board has fully considered all medical evidence and lay assertions of record. Generally, the Veteran is deemed competent to report on her current symptoms and their onset. However, there is no evidence that she possesses the specialized skills and expertise necessary to render complex medical opinions or opine as nature and etiology of his current symptoms. Layno v. Brown, 6 Vet. App. 465, 470 (1994); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377. 

While the Board acknowledges the Veteran’s assertion that his sinus condition was caused by or otherwise related to active service, the evidence of record does not support her contention. Service treatment records are silent for treatment for treatment for a chronic sinus or respiratory condition. A current diagnosis of a respiratory condition was first noted in January 2019, almost 3 decades later. In June 2019, the VA examiner acknowledged the favorable findings of the diagnostic consultant but found no causal linkage between the Veteran’s in-service treatment for cold symptoms and his current diagnosis of a sinus condition rendered decades after separation. Moreover, a Gulf War medical examination was conducted in May 2019 and no gulf war syndromes, to include an undiagnosed illness or chronic multi-symptom illness were indicated.

Although the Board is sympathetic to the Veteran’s subjective belief that his sinus condition is causally related to active service, the medical evidence does not support her position.

Accordingly, as the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107 (b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for chronic sinusitis must be denied.

5. Entitlement to service connection for a cervical strain (claimed as chronic cervicothoracic pain with right upper extremity)

The Veteran contends that he suffers from a cervical strain as causally related to active service. As discussed more fully below, the preponderance of the evidence is against his claim.

In considering the Veteran’s claim, the threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. 

The Board concludes that, while the Veteran has a current diagnosis of cervical strain, and the record shows in-service reports of neck pain, the preponderance of the evidence weighs against finding that the Veteran’s current condition is etiologically related to active service.

Service treatment records are largely silent for complaints of neck pain or any cervical abnormality. An emergency care treatment record, dated October 1989, referenced mild injuries suffered in a slip and fall. On examination, tenderness was observed about the neck. In June 1991, no neck or cervical abnormalities were observed during a periodic examination. A report of medical history, bearing the same date, made no reference to neck pain. At separation, a physical examination revealed normal findings. No cervical abnormalities were noted January 1992.

In January 2019, the Veteran was evaluated by a private diagnostic consultant. 

On examination, range of motion of the cervical spine revealed flexion limited to 20 degrees, extension limited to 10 degrees, right lateral rotation limited to 30 degrees, left lateral rotation limited to 40 degrees, right lateral flexion limited to 10 degrees, and left lateral flexion limited to 15 degrees. Evidence of pain was noted on examination. A significant loss (50 percent or more) of vertebral mobility was observed at C4 and C5. Hypertonicity was observed at the suboccipital triangle and posterior cervical musculature. The current diagnoses were listed as degenerative joint disease and spondylosis of the cervical and cervicothoracic regions with radiculopathy. 

Following the physical examination, the consultant opined that it is at least as likely as not that the Veteran’s neck condition is casually related to active service, to include as due to in-service treatment for injuries related to a slip and fall. 

In May 2019, the Veteran underwent a VA examination. A current diagnosis of cervical strain was rendered. During the clinical interview, the Veteran reported in-service treatment for neck pain following a slip and fall. Reportedly, he was knocked unconscious and suffered short-term memory loss. The Veteran was evaluated in the emergency room and prescribed Gabapentin to treat pain.

Post service, the Veteran denied any additional treatment for neck pain. Current symptoms include constant pain which radiated to both shoulders. Worsening pain impacted the right shoulder. Pain was described as an 8 or 9 on a 10-point scale. 

Range of motion testing revealed forward flexion, extension, and right lateral flexion was limited to 15 degrees. Left lateral flexion was limited to 20 degrees; right lateral rotation was limited to 25 degrees and left lateral rotation was limited to 30 degrees. Pain was observed with all ranges of motion and it causes functional loss. Abnormal range of motion does not contribute to functional loss, to include with repetitive use testing. Localized pain to palpation was observed over the posterior neck. Pain was observed with weight bearing and it limits functional ability over time. There was no evidence of muscle spasms or guarding. Muscle strength testing was normal. There was no evidence of muscle atrophy or ankylosis. Deep tendon reflexes and sensation was also normal. There was no evidence of radiculopathy or intervertebral disc syndrome (IVDS). Diagnostic testing found no evidence of arthritis or vertebral fracture. A functional impact was described as mild pain with the arms held above shoulder level. 

Although the Veteran’s complaints of neck pain dating back to active service were acknowledged, X-ray films revealed normal findings. There was no evidence of an acute cervical spine condition.

In making all determinations, the Board has fully considered all medical evidence and lay assertions of record. Generally, the Veteran is deemed competent to report on her current symptoms and their onset. However, there is no evidence that she possesses the specialized skills and expertise necessary to render complex medical opinions or opine as nature and etiology of his current symptoms. Layno v. Brown, 6 Vet. App. 465, 470 (1994); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377.

On review of the record, the Board observes that the Veteran sought in service treatment for injuries related to a slip and fall. Complaints of symptoms included neck pain. No abnormalities were identified, and oral medications were prescribed to treatment. No further complaints of symptoms were noted in service. Post-service, the Veteran denied seeking additional treatment. On VA examination, a current diagnosis of a cervical strain was indicated. However, X-ray films revealed normal findings. No causal linkage was established between the Veteran’s cervical strain with pain and in-service treatment for neck pain decades earlier.

Although the Board is sympathetic to the Veteran’s subjective belief that his cervical strain is causally related to active service, to include as due to in-service treatment for neck pain, the medical evidence does not support her position. Moreover, no residual symptoms or cervical abnormalities were noted at separation or within one year thereafter. 

Accordingly, as the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107 (b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for a cervical strain must be denied.

6. Entitlement to service connection for a lumbar strain 

The Veteran contends that he suffers from a lumbar strain as causally related to active service. As discussed more fully below, the preponderance of the evidence is against his claim.

In considering the Veteran’s claim, the threshold inquiry before the Board is whether the Veteran has a current disability that began during service or is at least as likely as not related to an in-service injury, event, or disease. 

The Board concludes that, while the Veteran has a current diagnosis of lumbar strain, and the record shows in-service treatment for low back pain, the preponderance of the evidence weighs against finding that the Veteran’s current condition is etiologically related to active service.

Service treatment records note period complaints of low back pain. In June 1986, the Veteran reported low back and left lower extremity pain. No specific abnormalities were identified. An emergency care treatment record, dated October 1989, referenced mild injuries suffered in a slip and fall. A report of medical history, June 1991, referenced broken bones and recurrent back pain. At separation, a physical examination revealed normal findings. No lumbar spine abnormalities were noted January 1992.

Post service treatment records show a favorable diagnostic consultant’s opinion, dated January 2019. Specifically, the opinion noted that the Veteran suffered a slip and fall injury to the low back with progressive symptoms since separation. Constant pain interferes with prolonged sitting, standing, and walking. On examination, range of motion of the lumbar spine revealed flexion limited 20 degrees, extension limited to 10 degrees, right lateral rotation limited 10 degrees, left lateral rotation limited to 15 degrees, right lateral flexion limited to 10 degrees, and left lateral flexion limited to 10 degrees. Fixation (of 50 percent or more) was observed at the lumbosacral joint with moderate hypertonicity of the superficial and deep musculature. Straight leg raise testing was positive at 30 degrees. A current diagnosis of degenerative joint disease of the lumbar spine was indicated. Following the physical examination, the consultant opined that it is at least as likely as not that the Veteran’s low back condition is casually related to active service, to include as due to in-service treatment for injuries sustained in a slip and fall.

In May 2019, the Veteran was afforded a VA examination. A current diagnosis of a lumbar strain was indicated. During the clinical evaluation, the Veteran reported working as a combat medic in service. His official duties required frequent bending and lifting patients. Post service, he worked as a machine operator for a spirit’s brewing company. He acknowledged use of muscle relaxers to treat low back pain.

On examination, the Veteran described flare-ups as increased low back pain with bending and exercise. Pain resulting in immobility has occurred three times since separation.

Range of motion testing revealed forward flexion limited to 35 degrees, extension limited to 15 degrees, right lateral flexion limited to 25 degrees, left lateral flexion limited to 20 degrees, left and right lateral rotation limited to 15 degrees. Passive range of motion testing revealed the same findings. 

Pain was observed with all ranges of motion and with weight bearing.

Range of motion does not contribute to functional loss to include with repetitive us. Pain to palpation was observed over the lumbar spine. It also limits functional ability during flare-ups. There was no evidence of muscle atrophy, muscle spasms or guarding. Deep tendon reflexes, sensation, and muscle strength was normal. Straight leg raise testing was also normal. There was no evidence of radiculopathy, ankylosis, neurological abnormalities, or IVDS. The Veteran denied use of assistive devices. 

Diagnostic testing was silent for any evidence of arthritis or loss of vertebral height. A functional impact was described as difficulty with bending and prolonged activity. X-ray films revealed normal findings. There was no evidence of acute findings. However, dystrophic prostatic calcifications with some visible vascular calcifications were noted in the pelvic region. 

In the same month an addendum opinion was issued. Therein, the examiner acknowledged consideration of the favorable diagnostic consultant’s opinion. Although a diagnosis of degenerative joint disease of the lumbar spine was rendered, no specific rationale was provided. While service treatment records show treatment for back pain, no permanent residuals or a chronic disability was noted at separation or within one year following service. In the absence of a longitudinal trend of subjective complaints and objective findings; no causal relationship could be established. Thus, the examiner opined that is less likely than not (less than 50 percent probability) that the Veteran’s low back strain (first diagnosed 27 years after separation) was incurred in or causally related to active service, to include as due to in-service treatment for low back pain. 

In making all determinations, the Board has fully considered all medical evidence and lay assertions of record. Generally, the Veteran is presumed competent to report on the onset of current symptoms, their impact on daily living and employment, and such reporting is deemed credible. However, as to the etiology of a particular claimed disability, the issue of causation of a medical condition is a medical determination outside the realm of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

Although the Board is sympathetic to the Veteran’s subjective belief that his lumbar strain is causally related to active service, to include as due to in-service treatment for back pain, the medical evidence does not support his position. Moreover, no residual symptoms or abnormalities of the lumbar spine were noted at separation or within one year, thereafter. 

Accordingly, as the preponderance of the evidence is against the claim, the provisions of 38 U.S.C. § 5107 (b) regarding reasonable doubt are not applicable. The Veteran’s claim of entitlement to service connection for a lumbar strain must be denied.

Increased Ratings, Generally

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities. 38 C.F.R. Part 4 (2018). The Board determines the extent to which a veteran’s service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, and the assigned rating is based, as far as practicable, upon the average impairment of earning capacity in civil occupations. 38 U.S.C. § 1155 (2014); 38 C.F.R. §§ 4.1, 4.10 (2018). Where entitlement to compensation has already been established and an increase in the assigned evaluation is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Although the recorded history of a particular disability should be reviewed in order to make an accurate assessment under the applicable criteria, the regulations do not give past medical reports precedence over current findings. Id.

The Court has held that staged ratings are appropriate for initial rating and increased rating claims when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

When all the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

7. Entitlement to an evaluation in excess of 50 percent disabling for service-connected post-traumatic stress disorder (PTSD)

The Veteran contends that the current severity of his service-connected PTSD to warrants a higher evaluation. For the reasons discussed in more detail below, the claim must be denied.

The Veteran’s service-connected PTSD is currently evaluated as 50 percent disabling under Diagnostic Code 9411. 38 C.F.R. § 4.130 (2018).

All psychiatric disabilities are evaluated under a General Rating Formula for Mental Disorders (General Rating Formula). 

A 50 percent rating is assigned when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; in difficulty establishing effective work and social relationships. Id.

A 70 percent rating is warranted for occupational and social impairment, with deficiencies in most areas, such as work, school, family relationships, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id.

A 100 percent rating is warranted when there is evidence of total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation or name. Id.

When determining the appropriate disability rating to assign, the Board’s primary consideration is the veteran’s symptoms, but it must also make findings as to how those symptoms impact the veteran’s occupational and social impairment. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013); Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Because the use of the term “such as” in the rating criteria demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, the Board need not find the presence of all, most, or even some, of the enumerated symptoms to ward a specific rating. Mauerhan, 16 Vet. App. at 442; see also Sellers v. Principi, 372 F.3d 1318, 1326-24 (Fed. Cir. 2004). Nevertheless, all ratings in the general rating formula are also associated with objectively observable symptomatology and the plain language of the regulation makes it clear that the veteran’s impairment must be “due to” those symptoms. A veteran may only qualify for a given disability by demonstrating the symptoms associated with that percentage, or others of similar severity, frequency, and duration. Vazquez-Claudio, 713 F.3d at 118.

Review of the record indicates that the Veteran has been afforded multiple VA examinations.

On examination in May 2019, a current diagnosis of PTSD was indicated. Prior to enlistment, the Veteran denied any history of substance abuse, legal problems, or psychological or psychiatric treatment. He denied any current psychological/psychiatric treatment. The Veteran is married and has five children. Post-service, he worked as a machine operator with Miller Coors Brewery.

The Veteran’s service-related stressors included caring for wounded soldiers as a combat medic.

Current symptoms included a depressed mood, anxiety, suspiciousness, panic attacks more than once per week, chronic sleep impairment, mild memory loss, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, including work-like settings, inability to establish and maintain effective relationships, obsessional rituals which interfere with routine activities, and neglect of personal appearance and hygiene.

Behavioral observations include a dysthymic mood with a congruent affect. No unusual psychomotor movements or behaviors were noted. The Veteran appeared alert and oriented with logical thinking. Cognitive function was described as average. No psychosis, suicidal or homicidal ideations, delusions or hallucinations were reported.

The Veteran’s current symptomology results in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation.

In July 2019, an addendum VA opinion was issued. Therein, the examiner indicated that the Veteran’s current symptomology results in occupational and social impairment with reduced reliability and productivity.

On review of the record, the Board finds that an evaluation in excess of 50 percent disabling is not warranted for any point during the appeal period.

In reaching the stated conclusion, the Board notes that during the relevant appeal period, the record evidence fails to show that the Veteran’s psychiatric disability resulted in occupational and social impairment, with deficiencies in most areas. 

In fact, the record shows that the Veteran has been consistently described as oriented, with a dysthymic mood and congruent affect, average cognitive functioning, logical thought processes, with no evidence of visual or auditory delusions. Although intermittent suicidal ideations were noted during a private psychological evaluation in February 2019, none were reported during VA examinations in May 2019 and July 2019. There is also no evidence of hospitalizations related to the Veteran’s psychiatric symptoms.

While the Board is sympathetic to the Veteran’s complaints of worsening symptoms and recognizes their impact on his normal activities of daily living, the record fails to show symptomology sufficient to warrant a higher evaluation of 50 percent disabling.

Accordingly, as the preponderance of the evidence is against the Veteran’s claim and reasonable doubt does not apply. See 38 U.S.C. § 5107 (b) (2014); 38 C.F.R. § 3.102 (2018); Gilbert v. Derwinski, 1 Vet. App. 49, 57-58 (1990). 

 

B. MULLINS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Whitaker, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.